ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| RAFAEL BERNAL<br><br>Apelado<br><br>v.<br><br>MELISSA A. MELÉNDEZ LAMBOY<br><br>Apelante | KLAN202401106 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2022RF01207<br><br>Sobre: Custodia |
|---|---|---|

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez.

Rodríguez Casillas, juez ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 18 de junio de 2025.

Comparece la Sra. Melissa A. Meléndez Lamboy ("Meléndez Lamboy" o "apelante"), a través del recurso de apelación epígrafe. Nos solicita que revisemos la *Sentencia* dictada el 7 de noviembre de 2024 y notificada el 8 de noviembre de 2024, por el Tribunal de Primera Instancia, Sala Superior de San Juan ("TPI"). En esta, el aludido foro no acogió las recomendaciones del Informe Social, y dispuso que la señora Meléndez Lamboy y el Sr. Rafael Bernal Martínez ("Bernal Martínez" o "apelado") ejercerían la custodia compartida de la menor A.Z.B.M. ("AZBM" o "menor").

Evaluada la totalidad del expediente, **confirmamos** la Sentencia apelada. Veamos los fundamentos.

**-I-**

Surge del expediente que durante la relación habida entre el señor Bernal Martínez y la señora Meléndez Lamboy nació la niña AZBM, quien en la actualidad es menor de edad. El **23 de septiembre de 2022**, el señor Bernal Martínez incoó una *Demanda*

sobre custodia y patria potestad.[1] En resumen, adujo que la señora Meléndez Lamboy ostentaba la custodia de AZBM y las partes tenían un acuerdo en cuanto a las relaciones paternofiliales. No obstante, alegó que la apelante había incurrido en conducta de violencia doméstica, por lo que solicitó, en el mejor bienestar de la menor, se le concediera la custodia monoparental a su favor, o en alternativa, la custodia compartida y patria potestad.

El **2 de diciembre de 2022**, la señora Meléndez Lamboy contestó la demanda e instó una reconvención.[2] En síntesis, negó los hechos y adujo que el señor Bernal Martínez la maltrataba y manipulaba, al punto de aprovechar el caso criminal pendiente por violencia doméstica para entonces presentar esta demanda. Por lo cual, reconvino para que se le otorgara provisionalmente la custodia monoparental de AZBM y una pensión alimentaria de $1,000.00; además, se refiriera al apelado a evaluaciones psicológicas y psiquiátricas pertinentes. Así, solicitó que se declarara no ha lugar la demanda instada y se refiriera el asunto a la Unidad Social de Relaciones de Familia para la investigación e informe social correspondiente.

El **15 de diciembre de 2022**, el señor Bernal Martínez contestó la reconvención.[3]

Tras varios trámites procesales, el **13 de febrero de 2023** el TPI ordenó a la Unidad Social de Relaciones de Familia y Asuntos de Menores ("Unidad Social") que realizara el estudio social sobre custodia y relaciones filiales en un término de 60 días.[4]

El **17 de febrero de 2023** fue celebrada una vista por videoconferencia con la asistencia del señor Bernal Martínez y la señora Meléndez Lamboy acompañados de sus respectivas

---

[1] Anejo 1 de la *Apelación Civil*, págs. 1 – 29.
[2] Anejo 3 de la *Apelación Civil*, págs. 32 – 40.
[3] Anejo 5 de la *Apelación Civil*, págs. 42 – 43.
[4] Anejo 8 de la *Apelación Civil*, pág. 49.

abogadas, [5] por lo que el TPI determinó esperar al insumo de la Unidad Social para modificar las relaciones paternofiliales. Así, le concedió a la referida Unidad hasta el 31 de marzo de 2023 para someter el informe solicitado.[6]

El **23 de febrero de 2023**, el señor Bernal Martínez informó que la señora Meléndez Lamboy salió de viaje por trabajo y dejó a la menor bajo el cuidado de terceras personas, por lo que solicitó que se le entregara a la menor cuando la madre tuviera que salir de la jurisdicción.[7] Por su parte, la apelante pidió que se denegara la solicitud del apelado.[8]

Referente al asunto, la Trabajadora Social de la Unidad Social, la Sra. Linette Soto Román ("TS Soto Román") informó que —basado en su evaluación hasta ese momento— recomendaba que se mantuviera el plan de las relaciones paternofiliales establecido y consideró que el apelado fuera la primera alternativa para el cuido de la menor cuando la apelante estuviera de viaje por trabajo.[9] El **5 de mayo de 2023**,[10] el TPI decidió no realizar determinaciones adicionales hasta concluida la evaluación de la Unidad Social.[11]

El **22 de junio de 2023**, la TS Soto Román presentó dos mociones; a saber: *"Moción Informe Social"* y *"Moción de la Unidad Social de Relaciones de Familia y Asuntos de Menores"*.[12] En la primera moción informó que la intervención había finalizado y el informe estaba disponible para la consideración del TPI.[13] Por otra parte, en la segunda moción incluyó las evaluaciones de la intervención social realizadas a la menor y sus progenitores.[14]

---

[5] Anejo 11 de la Apelación Civil, pág. 53.
[6] Emitida el 17 de febrero de 2023 y notificada el 21 de febrero de 2023.; Anejo 11 de la *Apelación Civil*, págs. 53 – 54.
[7] Anejo 12 de la *Apelación Civil*, págs. 55 – 56.
[8] Anejo 13 de la *Apelación Civil*, págs. 57 – 59.
[9] Anejo 16 de la *Apelación Civil*, págs. 65 – 66.
[10] Notificada el 8 de mayo de 2023.
[11] Anejo 20 de la *Apelación Civil*, pág. 73.
[12] Anejos 24 y 26 de la *Apelación Civil*, pág. 80 y 113, respectivamente.
[13] Anejo 24 de la *Apelación Civil*, pág. 80
[14] Anejos 26 y 27 de la *Apelación Civil*, págs. 113, 114 – 142, respectivamente.

Referente al *"Informe Social Forense"* del **21 de junio de 2023**,[15] la TS Soto Román, en lo pertinente, esbozó los siguientes hallazgos:

> *[A]l realizar nuestra evaluación se encontró que la menor no recibe servicios ni cuenta con diagnósticos en el área de salud mental. Por otro lado, la Sra. Meléndez informó que recibe tratamiento psicológico. […] Mientras, el Sr. Bernal indicó que no recibe servicios de salud mental al presente.*
>
> *Ambas partes y la menor fueron referidas a evaluaciones de salud mental. En evaluación de la Sra. Meléndez, se determinó que esta demostró introspección con relación a la conducta presentada en incidente violento ocurrido entre las partes, por lo que no ameritó servicios adicionales de reeducación. En cuanto al padre, se encontró mediante evaluación que debe fortalecer las capacidades de crianza saludable. Luego de lo evaluado y validado a través de nuestras intervenciones, se determina que es fundamental que las partes adquieran herramientas para el manejo de emociones. Además, que estos puedan desarrollar las habilidades necesarias para establecer una comunicación asertiva en torno a los asuntos de la menor, sin que esto interfiera con los remedios establecidos debido a los conflictos surgidos.*
>
> *Las partes cuentan con orden de protección vigente al amparo de la Ley 54 hasta el 7 noviembre de 2023. El remedio fue solicitado por el Sr. Bernal en contra de la Sra. Meléndez. Estos se encuentran en etapa de juicio para determinar violaciones a la ley por parte de la madre. Durante las entrevistas realizadas, ambas partes realizaron alegaciones sobre el otro en cuanto a aspectos de violencia doméstica. A pesar de las alegaciones de cada parte, la Sra. Meléndez es quien se encuentra en un proceso criminal a la espera de determinaciones por incidente en el cual se halló causa para juicio.*
>
> *A pesar de las diferencias habidas entre las partes, de nuestra intervención, se desprende que ambos se han integrado a los asuntos de la menor atendiendo así sus necesidades de salud, emocionales, educativas, afectivas y económicas. Se logró validar que la menor mantiene vínculos afectivos hacia ambos progenitores. La Sra. Meléndez y el Sr. Bernal cuentan con los recursos y la disponibilidad para ejercer el cuidado efectivo de la menor. Aunque estos se separaron desde el nacimiento de la menor, las relaciones paternofiliales han sido consistentes.*
>
> *Aun así, ante las circunstancias actuales, sobre orden de protección y proceso criminal por Ley 54, las partes no mantienen comunicación. Del historial, se encontró que, a pesar de lograr acuerdos sobre las relaciones paternofiliales, las partes han mantenido una dinámica de hostilidad entre sí. Ambos progenitores fueron sumamente críticos hacia el otro y enfatizaban sobre los conflictos de cada uno. […].*
>
> *[S]e identificó que, debido a la falta de comunicación asertiva entre los progenitores, se han coordinado servicios para la menor sin consultarlo y en este caso, el Sr. Bernal no se ha integrado a algunos de estos, como por ejemplo las tutorías y clases de dibujo. No obstante, ambos se encuentran al tanto de los servicios que recibe Alana. De igual forma, la madre no ha estado de acuerdo en que la menor permanezca con el padre cuando sale de viaje por motivos de empleo, a pesar de que anteriormente se lo había solicitado. La Sra. Meléndez indicó que el padre solía negarse si no le*

---

[15] Anejo 25 de la *Apelación Civil*, págs. 81 – 112.

*correspondía pasar tiempo con la menor. El Sr. Bernal aceptó haber presentado esta conducta por entender que la madre lo hacía con el propósito de asistir a actividades sociales. El padre afirmó que cuenta con la disponibilidad siempre y cuando el plan esté establecido y se le notifique con anticipación.*

*De la evaluación psiquiátrica realizada en la Clínica de Diagnóstico no se encontraron indicadores de enajenación parental. Esbozados los factores encontrados, entendemos que no existe enajenación parental ya que, aunque las partes mantengan diferencias, no existen restricciones para que la menor continúe relacionándose con ambos. A su vez, la menor expresó que desea relacionarse con sus padres por lo que no existe un rechazo de parte de esta.*

*[...]*

*[A]l revisar los criterios para descartar una custodia compartida se encontró que a pesar de que la Sra. Meléndez no ha sido convicta, esta se encuentra dentro de un proceso criminal en su contra por violencia doméstica, según lo dispuesto en la Ley Núm. 54. Se confirmó que la madre y el padre han mantenido discordias las cuales han ocurrido en presencia de la menor. Aun así, la Sra. Meléndez demostró pobre capacidad para controlar impulsos durante el conflicto habido entre estos por lo que es necesario contar con la determinación de dicho proceso judicial.*

*En el caso que nos ocupa, existe una situación excepcional ya que se encontró que los progenitores han brindado seguimiento adecuado a las necesidades de la menor. No obstante, los conflictos existentes entre las partes han interferido en cuanto a la corresponsabilidad de sus roles parentales. Resulta imperativo que el Sr. Bernal y la Sra. Meléndez logren anteponer el bienestar de la menor a sus diferencias. Ambos padres demostraron críticas constantes hacia el otro. De continuar la dinámica conflictiva entre estos, es inevitable que el bienestar de la menor se vea comprometido. Les compete a los padres salvaguardar la estabilidad de Alana quien depende de que cada uno pueda involucrarse en su vida, para una crianza saludable.[16]*

Basado en lo antes dicho, la TS Soto Román realizó las siguientes recomendaciones:

**CUSTODIA:**
1. *Que la Sra. Melissa Meléndez Lamboy ostente la custodia provisional de la menor [...].*

**RELACIONES PATERNO FILIALES:**
2. *Que se establezca un plan de relaciones paternofiliales en el cual la menor [...] se relacione con el Sr. Rafael Bernal Martínez, padre en semanas alternas desde jueves hasta lunes con recogido y entrega en la escuela. Del lunes ser día no lectivo, entregará a la menor el martes en la escuela.*
3. *En la semana que no le corresponda, el padre se relacionara con la menor los martes hasta miércoles, con entrega y recogido en la escuela.*
4. *Durante el periodo de verano, que la menor se relacione con el padre en semanas alternas de lunes a lunes con entrega en el campamento de verano.*
5. *Durante las fechas festivas, que la menor se relacione con el Sr. Bernal como sigue:*

---

[16] Anejo 25 de la *Apelación Civil*, págs. 106 – 108.

a. *El día de Acción de Gracias de 2023, la menor se relacionará con el padre desde las 6:00pm hasta el lunes con entrega en la escuela.*

b. *La menor se relacionará con el padre desde la culminación del semestre escolar en diciembre 2023 hasta el 25 de diciembre de 2023 a las 6:00pm.*

c. *El 30 de diciembre de 2023, la menor se relacionará con el padre hasta el próximo día a las 3:00pm.*

d. *El 6 de enero de 2024, la menor se relacionará con el padre desde las 6:00pm hasta el próximo día a las 6:00pm.*

   *Estas fechas serán alternadas cada año. Para la entrega y recogido de la menor, la primera opción de recursos intermediarios serán los abuelos de la menor. De estos no estar disponibles, podrán ser intermediarios, la tía materna de la menor, la Sra. Frances Meléndez y/o los recursos de la madre, el Sr. Juan Ramírez y el Sr. Luis Cay.*

6. *Durante el periodo no lectivo y de vacaciones, el punto de entrega y recogido será en el Centro Comercial, Galería Paseos de San Juan a través de los recursos identificados.*

**OTROS:**

1. *Que las partes se beneficien de talleres de crianza.* […]

2. *Que el Sr. Rafael Bernal coordine servicios psicológicos a través de su proveedor de servicios médicos para obtener destrezas de manejo de emociones según recomendación de evaluación realizada.*

3. *Que la Sra. Melissa Meléndez continúe recibiendo servicios psicológicos según recomendación de evaluación realizada.* […]

4. *Que la Sra. Meléndez informe al tribunal la determinación del proceso judicial en su contra.*

5. *Que el Sr. Rafael Bernal, padre, sea quien permanezca con la menor de la Sra. Meléndez, madre requerir viajar fuera de Puerto Rico.*

6. *Que el caso sea revaluado en 10 meses con el propósito de confirmar el cumplimiento de las recomendaciones y para emitir recomendaciones finales de custodia.*[17]

El **27 de junio de 2023** el señor Bernal Martínez adujo que las recomendaciones de la TS Soto Román carecían de metodologías y base científica adecuada por lo que impugnaría el informe presentado, y acompañó el *curriculum vitae* de su perito, el Sr. Larry Emil Alicea Rodríguez ("Alicea Rodríguez" o "perito del apelado").[18]

---

[17] Anejo 25 de la *Apelación Civil*, págs. 110 – 111.
[18] Anejo 29 de la *Apelación Civil*, págs. 145 – 218.

El **13 de julio de 2023**, la señora Meléndez Lamboy presentó *"Moción en Cumplimiento de Orden Sobre Informe Social Forense"*.[19] En síntesis, informó que se allanaba a las recomendaciones en los asuntos de custodia y relaciones filiales, pero sugirió que se modificara los puntos número cuatro (4) y número (5).

Luego de escuchar las manifestaciones de las partes, el **14 de julio de 2023** el TPI les ordenó a presentar una moción conjunta de manejo de caso.[20] Acto seguido, les apercibió a que el incumplimiento sin justa causa con lo ordenado, conllevaría la denegatoria de la solicitud y tendría el efecto de que se allanasen a las recomendaciones del Informe sometido por la Unidad Social.

El **25-26 de abril de 2024**, se celebró la Vista de Impugnación del Informe Social a la que comparecieron las partes acompañadas de sus abogados. También, compareció la TS Soto Román como perito del tribunal y el señor Alicea Rodríguez como perito del apelado.

Escuchada la prueba presentada, el **7 de noviembre de 2024** el TPI emitió la *Sentencia* apelada,[21] en la que realizó las siguientes determinaciones de hechos:

1. *Las partes, Rafael Bernal Martínez y Melissa Meléndez Lamboy, son los padres de la menor* [AZBM]*, nacida el 5 de enero de 2016.*
2. *Las partes no contrajeron matrimonio y convivieron bajo el mismo tech[o] durante un periodo del embarazo de la señora Meléndez Lamboy; hasta que ésta tenía ocho meses de embarazo.*
3. *Desde el momento de conocer del embarazo las partes han tenido una relación conflictiva.*
4. *A pesar de los conflictos en la relación entre las partes, desde el nacimiento de [AZBM] el señor Bernal Martínez ha sido una figura presente en la vida de la menor.*
5. *La menor reside junto a su madre y su hermanito mayor en San Juan.*
6. *El señor Bernal Martínez reside en Carolina.*
7. *El señor Bernal Martínez se relaciona con la menor los fines de semanas alternos de viernes a lunes. Además, se relaciona con la menor semanalmente, de martes a miércoles.*

---

[19] Anejo 31 de la *Apelación Civil*, págs. 220 – 221.
[20] Emitida y notificada el 14 de julio de 2023.; Anejo 32 de la *Apelación Civil*, págs. 222 – 223.
[21] Notificada el 8 de noviembre de 2024.; Anejo 34 de la *Apelación Civil*, págs. 225 – 236.

8. El lugar de entrega y recogido es la escuela de la menor y cuando no hay clases utilizan como intermediarios a dos amigos de la señora Meléndez Lamboy, a saber: el Sr. Luis Cay y el Sr. Juan Ramírez.

9. Al momento en que se celebró la Vista de Impugnación en este caso estaba vigente una Orden de Protección en contra de la señora Meléndez Lamboy y a favor del señor Bernal Martínez, por unos hechos acaecidos en el 2022, por los que también se presentaron cargos criminales a tenor con la Ley 54.

10. El padre de la señora Meléndez Lamboy, el Sr. Reynaldo Meléndez, quien reside en Juana Díaz, es el que funciona como intermediario entre las partes para fines de la comunicación sobre los asuntos relacionados con la menor.

11. Los otros recursos de apoyo de la señora Meléndez Lamboy son su madre, la Sra. Maritza Lamboy Hernández, quien reside en Mayagüez; y su hermana, la Sra. Frances Meléndez, quien reside en Isabela.

12. La señora Meléndez Lamboy viaja a Nueva York una vez al mes por motivos de trabajo y durante ese periodo la señora Lamboy Hernández viene de Mayagüez y se queda en la casa de la demandada cuidando a [AZBM] y a Alejandro.

13. El señor Bernal Martínez reside con su pareja, la Sra. Jennypher Rivera, y la hija menor de ésta, Jeylin Vargas, de 17 años.

14. Cuando el señor Bernal Martínez trabaja los sábados de los fines de semana que tiene a la menor, su mamá, la Sra. Petra Milagros Martínez, quien vive en Coamo, le asiste en el cuidado de [AZBM].

15. [AZBM] identifica a su abuela paterna como "Yeya" y manifiesta que le gusta quedarse en casa de Yeya, donde comparte con su prima Dily, que tiene su misma edad.

16. A [AZBM] le gusta estar con ambos progenitores.

17. [AZBM] estudia en la Academia Adventista.

18. En el ejercicio del dibujo de la familia, [AZBM] identificó como su familia a su mamá, a su hermano Alejandro, a su papá y a Jenny, la pareja de su papá.

19. Al completar la prueba de oraciones incompletas, [AZBM] que no cambiaría nada de su mamá ni de su papá y que desconoce lo que cada parte opina sobre el otro.

20. Como parte de la evaluación social realizada en este caso se validó la existencia de un vínculo afectivo entre [AZBM] y el señor Bernal Martínez.

21. Como parte de la evaluación social realizada en este caso se validó la existencia de un vínculo afectivo entre [AZBM] y la señora Meléndez Lamboy.

22. La abuela materna de la menor, la señora Lamboy Hernández, confirmó que [AZBM] comparte con el señor Bernal Martínez sin inconvenientes.

23. La señora Meléndez Lamboy contrató a un detective privado para investigar respecto a Jennypher, la pareja del señor Bernal Martínez; y, además, contactó al padre de los hijos de Jennypher para decirle que ésta quería quitarle a su hija y que el demandante es una persona violenta.

24. El señor Bernal Martínez contactó al Sr. Alex Rivera Laffitte, padre de Alejandro, el otro hijo de la señora Meléndez Lamboy, para indagar sobre cómo habían sido sus procesos legales con la demandada.

25. La hermana de la demandada, la Sra. Frances Laboy, confirmó que el señor Bernal Martínez quiere mucho a [AZBM]; que le da todo; que se involucra en la crianza de la niña y, que cumple con las visitas desde el nacimiento de [AZBM]. Asimismo, declaró que nunca ha presenciado un altercado entre las partes.

26. *[AZBM] estudia en la Academia Primaria Adventista de San Juan.*

27. *El señor Bernal Martínez no ha logrado acceso a la plataforma educativa de la menor, pero ha procurado obtener la información necesaria a través de la maestra de [AZBM].*

28. *La Sra. Nayda Filomeno, Directora Escolar, confirmó que [AZBM] mantiene buen aprovechamiento académico y buena conducta.*

29. *En cuanto al acceso a la plataforma educativa, la señora Filomeno confirmó que corresponde al progenitor que tiene acceso proveerle la contraseña al otro progenitor.*

30. *La señora Filomeno confirmó que [AZBM] se presenta al plantel escolar con una apariencia e higiene adecuada, utilizando el uniforme completo; que la excusan si se ausenta; y, que asiste con los materiales requeridos y con sus tareas realizadas.*

31. *La señora Filomeno confirmó además que ambas partes se involucran en el seguimiento escolar de la menor.*

32. *La menor recibe tutorías una vez a la semana, los lunes; y, es la señora Meléndez Lamboy la que la lleva.*

33. *Ambas partes cuentan con empleo y un ingreso que les permite proveer para el sustento de la menor y satisfacer sus necesidades.*

34. *Ambas partes cuentan en sus viviendas con los acomodos necesarios para la menor.*

35. *La señora Meléndez Lamboy tiene licencia para uso de cannabis medicinal.*

36. *La señora Meléndez Lamboy recibe tratamiento psicológico pero su terapeuta, la Dra. Legna Ortega, no estuvo disponible para ser entrevistada por la Trabajadora Social del Tribunal.*

37. *Como parte del proceso de evaluación conducido por la Unidad Social, la señora Meléndez Lamboy fue sometida a evaluación psicológica y psiquiátrica, así como a evaluaciones en el área de Manejo de Coraje y con el Programa de Padres y Madres Maltratantes del Instituto de Reeducación de Puerto Rico.*

38. *De acuerdo con la Sra. Lydia Morales Arroyo, evaluadora del Programa de Padres y Madres Maltratantes del Instituto de Reeducación de Puerto Rico, previo a poder someterse a procesos de reeducación en las áreas de manejo de coraje y capacidades protectoras, la señora Meléndez Lamboy necesita estabilizar su estado emocional. No obstante, en la evaluación no se encontró peligrosidad ni normalización de la violencia. Para la señora Meléndez Lamboy se recomendó que continúe con su tratamiento psicológico, evaluación para terapia familiar y psiquiátrica.*

39. *Como parte del proceso de evaluación conducido por la Unidad Social, el señor Bernal Martínez fue sometido a evaluación psicológica y psiquiátrica, así como a evaluaciones en el área de Manejo de Coraje y con el Programa de Padres y Madres Maltratantes del Instituto de Reeducación de Puerto Rico.*

40. *De acuerdo con la Sra. Lydia Morales Arroyo, evaluadora del Programa de Padres y Madres Maltratantes del Instituto de Reeducación de Puerto Rico, en el caso del señor Bernal Martínez se determinó que está listo para integrarse a los programas de manejo se coraje y para padres y madres maltratantes. Además, se recomendó que recibiera evaluación psicológica, terapia de familia y prueba de dopaje.*

41. *La Sra. Lydia Morales Arroyo, evaluadora del Programa de Padres y Madres Maltratantes del Instituto de*

*Reeducación de Puerto Rico no fue entrevistada como parte del estudio conducido por la Unidad Social.*

42. *De la evaluación psiquiátrica realizada a [AZBM] surge que la menor se encuentra saludable emocionalmente, que expresó apego hacia ambos padres y que no se identificaron indicadores de alienación parental.*

43. *De las evaluaciones psiquiátricas realizadas a las partes surge que tanto la madre como el padre se encuentran capacitados emocionalmente.*

44. *De la evaluación psicológica realizada a [AZBM] surge que se identificaron relaciones afectivas adecuadas con las figuras significativas y que la menor mantiene buena relación con ambos padres.*

45. *De la evaluación psicológica realizada a la señora Meléndez Lamboy surge que se recomendó que reciba terapia psicológica individual ante los indicadores de depresión y ansiedad.*

46. *De la evaluación psicológica realizada a ambas partes se muestra que "el conjunto de la información mostrada no sugiere la existencia de limitaciones" en cuanto a asumir el cuidado de la menor.*

47. *A la luz de los hallazgos de la evaluación psicológica se les recomendó a las partes terapia de comunicación y considerar como alternativa la mediación de conflictos.*

48. *El 8 de mayo de 2022, se concedió la Orden de Protección número OPA2022-027641, a favor del señor Bernal Martínez y en contra de la señora Meléndez Lamboy.*

49. *El 26 de septiembre de 2022, se radicó una denuncia en contra de la señora Meléndez Lamboy por violaciones a los Artículos 3.1 y 3.3 de la Ley 54.*

50. *Se estipularon las credenciales de la Trabajadora Social Soto Román.*

51. *En su Informe, la Trabajadora Social Soto Román recomienda que la señora Meléndez Lamboy mantenga provisionalmente la custodia monoparental de la menor, [AZBM], y que el caso sea reevaluado en 10 meses. Entendió la Trabajadora Social que una Custodia Compartida no es favorable en estos momentos.*

52. *La Trabajadora Social Linette Soto Román sustenta su recomendación en dos premisas, a saber:*
    a. *De las evaluaciones de manejo de coraje y capacidades protectoras se concluyó que el señor Bernal Martínez requiere servicios de reeducación en ambas áreas; y,*
    b. *La existencia de una orden de protección no permite que haya comunicación directa entre ellos.*

53. *Se estipularon las credenciales del Perito de la parte demandante, Dr. Larry Emil Alicea Rodr[í]guez.*

54. *El perito de la parte demandante, doctor Alicea Rodríguez, es de la opinión que, de acuerdo con la literatura especializada en violencia intrafamiliar, la custodia usualmente se otorga a la víctima y no a la persona identificada como agresora.*

55. *El perito de la parte demandante, doctor Alicea Rodríguez que la Trabajadora Social Soto Román se equivocó al usar la falta de comunicación directa entre las partes como un obstáculo para que funcione una custodia compartida. [sic].*

56. *El perito de la parte demandante, doctor Alicea Rodríguez, opina que las conclusiones y recomendaciones de la Trabajadora Social Soto Román no están fundamentadas en un proceso adecuado de triangulación de datos porque el caso no presenta ningún aspecto de exclusión, legal o teórico, que contraindique la custodia compartida.*

57. *El perito de la parte demandante, doctor Alicea Rodríguez, entiende que los datos fueron recopilados correctamente*

> *por la Trabajadora Social Soto Román, pero que el análisis no fue el correcto porque los datos proyectan que ambos padres están en igual capacidad para asumir la crianza de la menor.*
>
> **58.** *El perito de la parte demandante, doctor Alicea Rodríguez, es de la opinión que no hay ningún elemento fundamentado en contra del señor Bernal Martínez que impida que éste pueda asumir la custodia compartida.*
>
> **59.** *La conclusión del doctor Alicea Rodríguez es que los datos obtenidos del estudio social realizado no contraindican una custodia compartida y que el señor Bernal Martínez cumple con los criterios legales y teóricos para que se considere esa opción en este caso.*[22]

Así, determinó que este caso satisface los criterios para conceder la custodia compartida de AZBM, por lo que no acogió las recomendaciones del Informe respecto a dicho asunto. Expresó que en casos como el de autos, la legislación aplicable les impone a los jueces el deber de evaluar la custodia compartida como primera alternativa. Además, indicó que la recomendación de mantener la custodia monoparental de la menor no se sustenta en la legislación vigente, y coincidió con el perito del apelante en que la TS Soto Román no realizó un análisis sosegado e integral de los criterios de la Ley Núm. 223-2011, según enmendada.[23] A los fines de sustentar su conclusión, el TPI ilustró los siguientes criterios:

> 1. ***La salud mental de ambos progenitores; así como la del hijo o hija cuya custodia se va a adjudicar***
>
> *De los hallazgos de esas evaluaciones entendemos que ninguno de los dos progenitores tiene condiciones de salud* **mental que les incapaciten para ejercer la custodia de Alana Zoé***.*
>
> *La perito del Tribunal sustenta su recomendación de mantener la custodia monoparental de manera provisional en que el señor Bernal Martínez "requiere reeducación en las áreas de manejo de coraje y de capacidades protectoras", basándose para ello en lo que surge de la evaluación realizada en el Programa de Padres y Madres Maltratantes del Instituto de Reeducación de Puerto Rico. Sin embargo, la Trabajadora Social Linette Soto Román no parece darle ningún peso o importancia al hecho de que de la evaluación realizada en el mismo Programa a la señora Meléndez Lamboy surge que "previo a que la madre se pueda someter a procesos de reeducación en áreas de manejo de coraje y capacidades protectoras, debe estabilizar su estado emocional". Eso, según*

---

[22] Anejo 34 de la *Apelación Civil,* págs. 226 – 230.
[23] Ley Núm. 223-2011, según enmendada, conocida como *"Ley Protectora de los Derechos de los Menores en el Proceso de Adjudicación de Custodia",* 32 LPRA sec. 3181 *et seq.*

*podríamos interpretarlo, podría sugerir que las condiciones de salud mental de la demandada no estén atendidas y controladas con el tratamiento que actualmente recibe. No obstante, no sabemos a qué se refería con ellos la Sra. Lydia Morales Arrroyo, Evaluadora del Programa de Padres y Madres Maltratantes del Instituto de Reeducación de Puerto Rico, porque ella no fue entrevistada por la Trabajadora Social Soto Román. En ese sentido, no podemos llegar a conclusiones de esa evaluación solamente que nos lleven a descartar a uno o a otro progenitor porque se haya identificado que podrían beneficiarse de determinados servicios y herramientas, máxima cuando de las evaluaciones psicológicas y psiquiátricas realizadas se desprende que ambos están capacitados emocionalmente y que no existen limitaciones en ninguno de ellos para ejercer el cuidado de la menor.* **_En este criterio, concluimos que el análisis de la Trabajadora Social estuvo errado._**

2. **_El nivel de responsabilidad o integridad moral exhibido por cada uno de los progenitores y si ha habido historial de violencia doméstica en el núcleo familiar_**

*Del Informe Social se desprende que, aunque ha habido alegaciones entre ambas partes sobre violencia o maltrato, la única orden de protección que se ha expedido y los únicos cargos criminales que se han presentado son en contra de la señora Meléndez Lamboy. Ello, sin embargo, no implica, analizando todos los criterios en conjunto, que la demandada esté incapacitada para mantener la custodia de su hija. Tampoco es un criterio que pese en contra del señor Bernal Martínez. Se trata de un área a trabajar y a mejorar por las partes.*

3. **_La capacidad de cada progenitor de satisfacer las necesidades afectivas, económicas y morales del menor_**

*Del estudio social se desprende que la menor tiene apego y relaciones afectivas con ambos progenitores; que ambos cuentan con los acomodos para la niña; y, que ambos cuentan con los recursos para satisfacer sus necesidades. En este criterio ambas partes están en igualdad de condiciones.*

4. **_El historial de cada progenitor con el hijo cuya custodia se va a adjudicar_**

*Del estudio social se desprende que ambas partes han sido figuras presentes y activas en la vida de la menor y que ella tiene apego y relaciones afectivas con ambos progenitores. La señora Meléndez Lamboy evidencia haber ejercido su rol custodio en beneficio de [AZBM], que es una niña física y mentalmente saludable, inteligente y responsable. El señor Bernal Martínez, por su lado, se ha mantenido presente en la vida de su hija, cumpliendo con las relaciones paternofiliales y estando pendiente a su hija, como confirman incluso los familiares de la señora Meléndez Lamboy.*

5. ***Las necesidades específicas del menor cuya custodia se va a adjudicar***

   *Como ya hemos señalado, ambas partes cuentan con los recursos y herramientas para atender las necesidades de la menor, como lo han venido haciendo. En este criterio ambas partes están en igualdad de condiciones.*

6. ***La interrelación del menor con sus progenitores, hermanos y demás miembros de la familia***

   *Del estudio social surge que la menor tiene buena relación con su hermanito, Alejandro; con Jenny, la pareja de su papá; con la Abuela Yeya y con su prima Diliana. En este sentido, en este criterio ambas partes están en igualdad de condiciones.*

7. ***Que la decisión no sea producto de la irreflexión o coacción***

   *En este criterio ambas partes están en igualdad de condiciones.*

8. ***Si ambos progenitores poseen la capacidad, disponibilidad y firme propósito de asumir la responsabilidad de esa custodia de forma conjunta***

   *En este caso, a pesar de las diferencias entre las partes, ambos han respetado el rol del otro y encontrado la forma de estar activamente presente en la vida de [AZBM], contribuyendo a su formación y crecimiento. La menor no parece haber percibido los enormes conflictos entre sus padres, según sugieren sus respuestas en la prueba de oraciones incompletas. En ese sentido, entendemos que, ambas partes satisfacen este criterio y que tienen la capacidad de anteponer el bienestar de la menor a cualquier diferencia entre ellos.*

9. ***Los verdaderos motivos de cada parte para solicitar u oponerse a la custodia compartida***

   *La señora Meléndez Lamboy ha planteado que la solicitud del demandante en este caso está sustentada en consideraciones económicas. Nada de lo que se desprende del estudio social en este caso sustenta ese planteamiento.*

10. ***Si la profesión, oficio u ocupación de los progenitores impide el ejercicio eficaz de la custodia***

    *En este criterio ambas partes están en igualdad de condiciones.*

11. ***Si la ubicación y distancia de ambos hogares perjudica la educación del menor***

    *En este criterio ambas partes están en igualdad de condiciones.*

12. ***La comunicación que existe entre los progenitores***

    *A pesar de la existencia de una Orden de Protección, de cargos criminales y de las diferencias abismales entre ellos, las partes han encontrado la forma de participar de manera conjunta en la vida de [AZBM], sin que ello afecte negativamente a la niña. Como surge de la entrevista realizada a la directora escolar, la menor siempre llega con su uniforme completo, sus tareas*

*realizadas y sus materiales. Las partes han encontrado alternativas para coordinar la entrega y recogido de la menor y cumplir así con las relaciones paternofiliales. Asimismo, el señor Bernal Martínez ha buscado opciones para obtener información de la escuela de la niña, aunque no tiene el acceso a la plataforma. Ciertamente, la comunicación no tiene que ser directa entre las partes para que proceda una custodia compartida, sino que puede ser por métodos alternos. Desconocemos cuál sea la situación actual de la Orden de Protección o el desenlace del proceso criminal, pero, de lo que sí estamos seguros, es de que hay alternativas en nuestro ordenamiento para abordar este asunto. Una de esas alternativas bien podría ser, como propone la parte demandante, la designación de un Coordinador de Parentalidad en este caso. Lo que no es posible es penalizar al señor Bernal Martínez, denegándole el derecho a ejercer la custodia de su hija por una situación de la cual él no es responsable. Como surge del estudio social realizado, es en contra de la señora Meléndez Lamboy que se expidió una Orden de Protección y se presentaron cargos criminales. A pesar de ello, no se le descarta a ella como alternativa para ejercer la custodia de su hija por ese hecho. ¿Por qué descartar entonces al padre?*

***Entendemos que en el análisis de este criterio se equivocó la Trabajadora Social Soto Román*** *y que existen alternativas para abordar el tema de la comunicación que no impliquen despojar a un padre, que reúne todos los criterios, de ejercer la custodia sobre su hija, máxime cuando no le es atribuible a él la situación legal que impide la comunicación directa.*
[…].[24]

Inconforme, el **9 de diciembre de 2024** la señora Meléndez Lamboy presentó el recurso de apelación de epígrafe. Nos señaló la comisión del siguiente error:

*Incidió el TPI en error al conceder la custodia compartida en el presente caso ya que no se cumple con los criterios establecidos en la Ley Núm. 223 para adjudicar custodia compartida ya que las partes ha habido un historial de Violencia Domestica entre las partes y no existe una comunicación adecuada entre los progenitores.*

En oposición, el **17 de diciembre de 2024** compareció el señor Bernal Martínez, por lo que dimos por sometido el asunto.

-II-

-A-

Al revisar una determinación de un tribunal de menor jerarquía, los tribunales apelativos tenemos la tarea principal de

---

[24] Anejo 34 de la *Apelación Civil*, págs. 232 – 236. *Énfasis en original.*

auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. [25] Como regla general los foros apelativos no debemos intervenir con las determinaciones de hechos de los tribunales de primera instancia, su apreciación sobre la credibilidad de los testigos y valor probatorio conferido a la prueba presentada en sala, pues solo contamos con *"récords mudos e inexpresivos"*.[26] Lo anterior, se fundamenta en la premisa de que el foro primario es quien tiene la oportunidad de escuchar a los testigos declarar y apreciar su *"demeanor"*.[27]

Sin embargo, la norma de deferencia antes esbozada encuentra su excepción y cede cuando la parte promovente demuestra que:

> *[h]ubo un craso abuso de discreción o que el tribunal actuó con perjuicio y parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial.*[28]

Por discreción se entiende el *"[t]ener poder para decidir en una forma u otra, esto es, para escoger entre uno o varios cursos de acción"*.[29] No obstante, *"[e]l adecuado ejercicio de la discreción está inexorable e indefectiblemente atado al concepto al concepto de la razonabilidad"*.[30] A esos efectos, el Tribunal Supremo de Puerto Rico ha enumerado situaciones que constituyen un abuso de discreción:

> *[c]uando el juez, en la decisión que emite, no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía se pasado por alto; cuando por el contrario el juez, sin justificación y fundamento alguno para ello, le concede gran paso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo; o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez livianamente sopesa y calibra los mismos.* [31]

---

[25] *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013).
[26] *Íd.*, págs. 770–771.; *SLG Rivera Carrasquillo v. AAA*, 177 DPR 345, 356 (2009).
[27] *Colón v. Lotería*, 167 DPR 625, 659 (2006).
[28] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).; *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012).
[29] *García v. Asociación*, 165 DPR 311, 321 (2005).
[30] *Íd.*
[31] *Ramírez v. Policía de PR*, 158 DPR 320, 340–341 (2002).

En cambio, si la actuación del tribunal no está desprovista de base razonable, ni perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de instancia a quien corresponde la dirección del proceso.[32] En ese sentido, las conclusiones de derecho son revisables en su totalidad por los tribunales apelativos.[33]

**-B-**

Pertinente a la controversia antes nos, la **custodia** es uno de los componentes de la patria potestad, dado que les impone a los padres el deber primario de tener a sus hijos no emancipados bajo su compañía.[34] Esto, ya que la custodia es la tenencia o control físico que tiene un progenitor sobre sus hijos.[35] Por su parte, la **custodia compartida** es *"[l]a obligación de ambos progenitores de ejercer directa y totalmente todos los deberes y las funciones que conlleva la patria potestad de los hijos, relacionándose el mayor tiempo posible y brindándoles la compañía y atención que se espera del progenitor responsable".*[36] El criterio rector que debe utilizar los tribunales ante una determinación de custodia es el bienestar y los mejores intereses del menor.[37] Entiéndase, que la determinación del tribunal sobre la custodia de un menor debe tomarse posterior a realizar un análisis objetivo, sereno y cuidadoso de todas las circunstancias del caso, y teniendo únicamente como objetivo principal el bienestar del menor.[38]

Por su parte, la Ley Núm. 223–2011, según enmendada, conocida como *Ley Protectora de los Derechos de los Menores en el*

---

[32] *SLG Zapata-Rivera v. JF Montalvo*, 189 DPR 414, 434–435 (2013).

[33] *Dávila Nieves v Meléndez Marín, supra,* pág. 770.

[34] *Jusino González v. Norat Santiago,* 211 DPR 855, 863 (2023).

[35] *Íd.*

[36] *Íd.*, a las págs. 863 – 864.; Véase; Artículo 3 de la Ley Núm. 223-2011, según enmendada, conocida como *"Ley Protectora de los Derechos de los Menores en el Proceso de Adjudicación de Custodia",* 32 LPRA sec. 3181.; Véase, además; Artículo 602 del *Código Civil de Puerto Rico" de 2020,* 31 LPRA sec. 7281.

[37] *Jusino González v. Norat Santiago, supra,* pág. 864.; *Muñoz Sánchez v. Báez de Jesús,* 195 DPR 645, 651 (2016).

[38] *Jusino González v. Norat Santiago, supra,* pág. 864.

*Proceso de Adjudicación de Custodia* ("Ley Núm. 223–2011") es un esfuerzo para *"[p]romover un mayor grado de participación y presencia de ambos progenitores en la vida de los niños que son producto de una pareja divorciada o de una pareja consensual separada* [...] *a los fines de contribuir a una mejor calidad de vida".*[39]

De esta manera se les permite a los menores no emancipados, *"[e]l derecho a disfrutar de ambos progenitores en su vida, en el mayor grado posible, en la misma forma que se les garantiza a los niños que viven con ambos progenitores".*[40] La promoción de la custodia compartida y la corresponsabilidad de los hijos fue decretada como política pública.[41]

En virtud de ello, en todos aquellos casos de divorcios, separación o disolución de una relación consensual que involucre menores de edad, el tribunal deberá evaluar y considerar la custodia compartida, siempre que esta sea beneficiosa a los mejores intereses del menor.[42] Salvo a que se presente prueba en contrario o apliquen las exclusiones establecidas en el Artículo 9 de la Ley Núm. 223–2011.[43] Así pues, en los casos de custodia el análisis del tribunal *"[d]ebe considerar la custodia compartida como primera opción, siempre que ello represente el mejor bienestar del menor".*[44]

En ese sentido, el Artículo 7 del referido estatuto dispone que, al considerarse una solicitud de custodia en la que surjan controversias entre los progenitores, el tribunal referirá el caso al Trabajador Social de Relaciones de Familia, para que realice una evaluación y rinda un informe con recomendaciones.[45] Al emitir la

---

[39] Exposición de Motivos de la Ley Núm. 223-2011.
[40] *Íd.*
[41] *Íd.*
[42] Artículo 4 de la Ley Núm. 223-2011, 32 LPRA sec. 3182.
[43] *Íd.*
[44] Art. 8 de la Ley Núm. 223-2011, 32 LPRA sec. 3186. Véase, además, *Jusino González v. Norat Santiago, supra,* pág. 864 (2023).; *Ortiz v. Meléndez,* 164 DPR 16, 26-27 (2005).
[45] 32 LPRA sec. 3185.

decisión, tanto el Trabajador Social como el tribunal, tomarán en consideración los siguientes criterios:

1) *La salud mental de ambos progenitores, así como la del hijo(a) o hijos(as) cuya custodia se va a adjudicar.*

2) *El nivel de responsabilidad o integridad moral exhibido por cada uno de los progenitores y si ha habido un historial de violencia doméstica entre los integrantes del núcleo familiar.*

3) *La capacidad de cada progenitor para satisfacer las necesidades afectivas, económicas y morales del menor, tanto presentes como futuras.*

4) *El historial de cada progenitor en la relación con sus hijos, tanto antes del divorcio, separación o disolución de la relación consensual, como después del mismo.*

5) *Las necesidades específicas de cada uno de los menores cuya custodia está en controversia.*

6) *La interrelación de cada menor, con sus progenitores, sus hermanos y demás miembros de la familia.*

7) *Que la decisión no sea producto de la irreflexión o coacción.*

8) *Si los progenitores poseen la capacidad, disponibilidad y firme propósito de asumir la responsabilidad de criar los hijos conjuntamente.*

9) *Los verdaderos motivos y objetivos por los cuales los progenitores han solicitado la patria potestad y custodia compartida.*

10) *Si la profesión, ocupación u oficio que realizan los progenitores impedirá que funcione el acuerdo efectivamente.*

11) *Si la ubicación y distancia de ambos hogares perjudica la educación del menor.*

12) *La comunicación que existe entre los progenitores y la capacidad para comunicarse mediante comunicación directa o utilizando mecanismos alternos.*

13) *Analizará la presencia de la enajenación parental, o cualesquiera otras razones que pudieran ocasionar la resistencia del menor para relacionarse con sus padres. […].*

14) *Cualquier otro criterio válido o pertinente que pueda considerarse para garantizar el mejor bienestar del menor.*[46]

En contrario, el Artículo 9 de la Ley Núm. 223-2011 establece los casos en que la custodia compartida no será considerada como beneficiosa y favorable para los mejores intereses de los menores, estos son:

1) *Cuando uno de los progenitores manifiesta que no le interesa tener la custodia de los menores, a base de un plan de custodia compartida. Se entenderá que la renuncia es a favor del otro progenitor.*

2) *Si uno de los progenitores sufre de una incapacidad o deficiencia mental, según determinada por un profesional de la salud, y la misma es de naturaleza irreversible y de tal magnitud que le impide atender adecuadamente a los hijos y garantizar su seguridad e integridad física, mental, emocional y/o sexual.*

---

[46] *Íd.*; Cabe señalar que el inciso (13) se encuentra repetido en el articulado.

*3)* *Cuando los actos u omisiones de uno de los progenitores resulten perjudiciales a los hijos o constituyan un patrón de ejemplos corruptores.*

*4)* *Cuando uno de los progenitores o su cónyuge, compañero o compañera consensual haya sido convicto por actos constitutivos de maltrato de menores.*

*5)* *Cuando uno de los progenitores se encuentre confinado en una institución carcelaria.*

*6)* *Cuando uno de los progenitores ha sido convicto por actos constitutivos de violencia doméstica, según lo establecido por la Ley Núm. 54 de 15 de agosto de 1989, según enmendada.*

*7)* *Situaciones donde el padre o la madre haya cometido abuso sexual, o cualquiera de los delitos sexuales, según tipificados en el Código Penal de Puerto Rico de Puerto Rico, hacia algún menor.*

*8)* *Cuando uno de los progenitores o su cónyuge o compañero o compañero consensual, si hubiera, sea adicto a drogas ilegales o alcohol.*
*[…].*[47]

Finalmente, cabe señalar que, *"[e]l Tribunal siempre tendrá discreción judicial para la determinación y adjudicación de custodia, protegiendo siempre los mejores intereses y el bienestar de los menores a la luz de todas las circunstancias existentes".*[48]

### -III-

En suma, la señora Meléndez Lamboy señala que el TPI erró al adjudicar la custodia compartida, ya que no se cumplen los criterios establecidos en la Ley Núm. 223-2011, *supra.* Arguye que el foro apelado incidió al no considerar las recomendaciones de la TS Soto Román y establecer la custodia compartida, pese a que no se cumplen los aludidos criterios. Adujo que los hechos del caso demuestran un historial de violencia doméstica y comunicación hostil e inadecuada entre los progenitores, lo cual perjudica los intereses de la menor. No tiene razón.

**En primer lugar**, el TPI no está obligado a aceptar las recomendaciones de la TS Soto Román. Nótese, que la política pública en este caso es que se opte —en primera instancia— por la custodia compartida, siempre que sea beneficiosa y favorable a los mejores intereses de la menor. Todavía más, el TPI al momento de

---

[47] 32 LPRA sec. 3187.
[48] 32 LPRA sec. 3186.

tomar la decisión y otorgar la custodia compartida de AZBM, consideró los criterios esbozados en la Ley Núm. 223-2011; cabe recordar que ninguno de ellos por sí solo es determinante para negar la custodia compartida.

**En segundo orden**, —y a tono con lo antes dicho— la apelante plantea que los progenitores no tienen buena comunicación y que ha existido un historial de violencia doméstica. No obstante, el TPI consideró que la custodia compartida beneficia y favorece los mejores intereses de AZBM y señaló que habían *alternativas para abordar el tema de la comunicación que no impliquen despojar a un padre, que reúne todos los criterios, de ejercer la custodia sobre su hija.*[49] Concurrimos con el dictamen del foro *a quo,* pues del expediente no surge prueba que demuestre que la custodia compartida no beneficia ni favorece los mejores intereses de la menor. En otras palabras, no existe ninguno de los criterios excluyentes establecidos en la legislación para que impidiera aprobar la custodia compartida.

Ante lo expuesto, somos del criterio de que el TPI actuó dentro de su facultad discrecional al adjudicar la custodia compartida, tomando en cuenta todos los criterios pertinentes incluyendo el bienestar y los mejores intereses de AZBM. En virtud de ello, procede confirmar el dictamen apelado.

-IV-

Por los fundamentos antes expuestos, **confirmamos** el *Sentencia* apelada.

Lo acordó el Tribunal y certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[49] Véase; Anejo 34 de la *Apelación Civil,* págs. 235 – 236.